IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:22-cr-15 |
| v. | ) |
| | ) By:  Michael F. Urbanski |
| ROBERT WAYNE WRIGHT, | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

**MEMORANDUM OPINION**

This matter comes before the court on defendant Robert Wayne Wright's Motion to Dismiss Count One of the indictment. ECF No. 42. Because Wright's alleged conduct affects interstate commerce and is therefore prohibited by 18 U.S.C. § 842(i), Wright's motion is **DENIED**.

**I.**

In February 2022, a grand jury charged Robert Wright with two counts related to explosive materials. Indictment, ECF No. 4, at 1-2. Wright now seeks to dismiss Count One. Def. Mot. Dismiss, ECF No. 42. This count charges that Wright—previously convicted of a felony—knowingly received or possessed explosive material that had been shipped and transported in or affecting interstate commerce, in violation of 18 U.S.C. §§ 842(i) and 844(a). ECF No. 4, at 1. Count Two, which is not currently at issue, charges Wright with the improper storage of these explosives in violation of 18 U.S.C. §§ 842(j) and 844(b), and 27 C.F.R. § 555.201 et seq. ECF No. 4, at 1-2.

Both parties agree that the government's evidence will show a set of basic facts: Wright purchased component ingredients of triacetone triperoxide (TATP), an explosive the

government refers to as "Mother of Satan," from retail stores in Virginia. Def. Mot. Dismiss, ECF No. 42, at 2; Resp. Opp'n, ECF No. 45, at 2-3. Each component ingredient—hydrogen peroxide, acetone, and sulfuric acid—is common, legal, and nonexplosive on its own. Def. Mot. Dismiss, ECF No. 42, at 2; Resp. Opp'n, ECF No. 45, at 2. At least one of these component ingredients was manufactured in another state and transported to Virginia prior to sale. Def. Mot. Dismiss, ECF No. 42, at 2; Resp. Opp'n, ECF No. 45, at 3 n.3. Wright combined these ingredients at his home in Vinton, transported the resulting TATP over public roads, and used the explosive to blow up tree stumps on private property. Def. Mot. Dismiss, ECF No. 42, at 2; Resp. Opp'n, ECF No. 45, at 3. The government has no evidence that Wright ever transported the TATP outside of Virginia. Def. Mot. Dismiss, ECF No. 42, at 3; Resp. Opp'n, ECF No. 45, at 3.

Wright argues that Count One should be dismissed because 18 U.S.C. § 842(i), as a matter of statutory construction, does not apply to his wholly intrastate conduct. Def. Mot. Dismiss, ECF No. 42, at 3.

## II.

Rule 12(3) of the Federal Rules of Criminal Procedure requires that the defendant to raise an issue such as an alleged "defect in instituting the prosecution" or "defect in the indictment" via pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(3). Because the parties agree on the essential common facts, even those extrinsic to the indictment, the court's consideration of this pretrial motion to dismiss Count One is proper. See United States v. Weaver, 659 F.3d 353, 356 n.* (4th Cir. 2011) ("As circuit courts have almost uniformly

concluded, a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts."). In evaluating a challenge to the sufficiency of the indictment, the court must "accept[] the allegations" and agreed facts as true. United States v. Hill, 700 F. App'x 235, 236 (4th Cir. 2017).

Wright was charged under 18 U.S.C. § 842(i), which provides that:

> It shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport any explosive in or affecting interstate or foreign commerce or to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce.

Id. An "explosive" under this section is further defined as:

> [G]unpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders, other explosive or incendiary devices within the meaning of paragraph (5) of section 232 of this title, and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j). An individual who violates 18 U.S.C. § 842(i) "shall be fined under this title, imprisoned for not more than 10 years, or both." 18 U.S.C. § 844(a).

When Congress uses the phrase "affecting interstate . . . commerce," such as in 18 U.S.C. § 842(i), it "expresses an intent by Congress to exercise its full power under the Commerce Clause." United States v. Miltier, 882 F.3d 81, 91 (4th Cir. 2018) (citing Russell v. United States, 471 U.S. 858, 859 (1985)) (internal quotations omitted)); see also Cir. City Stores,

3

Inc. v. Adams, 532 U.S. 105, 115 (2001) ("The phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause.").

To determine what the government must show to prove "the commerce element," courts look to the "three categories of activity that Congress may regulate under its power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce . . . and (3) those activities having a substantial relation to interstate commerce, . . . i.e., those activities that substantially affect interstate commerce." Taylor v. United States, 579 U.S. 301, 306 (2016) (evaluating the sufficiency of the evidence required to prove the commerce element under the Hobbs Act). Activities come within this third category "so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." Id. (citing Wickard v. Filburn, 317 U.S. 111, 125 (1942)).

### III.

Wright argues that Count one should be dismissed because, under this shared set of facts, his alleged conduct does not have a sufficient interstate nexus and therefore cannot be charged under 18 U.S.C. § 842(i). Def. Mot. Dismiss, ECF No. 42, at 3. The government contends that Wright's actions substantially affect interstate commerce in three independent ways: (A) the component parts travelled in interstate commerce; (B) explosives as a class have a substantial effect on interstate commerce; and (C) Wright used the channels and instrumentalities of interstate commerce—public roads—to transport the TATP he created. Resp. Opp'n, ECF No. 45, at 1, 5. Each is discussed in turn.

### A. Component Parts

Wright's primary argument is that an explosive does not travel in or affect interstate commerce unless the completed explosive—not simply its separate component parts—travels interstate. Def. Mot. Dismiss, ECF No. 42, at 3. Wright contrasts the provision at issue here, which prohibits individuals with felony convictions from transporting or possessing explosives, 18 U.S.C. § 842(i), with the provision that prohibits individuals with felony convictions from transporting or possessing firearms, 18 U.S.C. § 922(g). While the language of the two provisions is nearly identical, the breadth of the definitions for the terms "explosive" and "firearm" differs. Where "firearm" specifically includes component parts such as frames or silencers, 18 U.S.C. § 921(a)(3), "explosive" does not include component materials that cannot, on their own, explode. 18 U.S.C. § 844(j). Because the government agrees that "the definition of 'explosive' excludes inert precursor materials," Resp. Opp'n, ECF No. 45, at 5, the court will not belabor this point. Only the movement of the completed explosive is relevant to determining whether the bomb was shipped or transported in interstate commerce.

However, the completed explosive need not have physically moved between states to have "affected" interstate commerce. 18 U.S.C. § 842(i). The government argues that Wright's purchases of component ingredients substantially affect interstate commerce. Resp. Opp'n, ECF No. 45, at 5-6. The government contends that the purchase and sale of these ingredients impacts supply and demand, causing retailers to replace the product sold by ordering from out-of-state manufacturers. Id. at 6. Further, the government asserts, these components do not "cease[] to affect interstate commerce once combined into an explosive." Id. at 7.

5

Because the court concludes that the second and third arguments proposed by the government establish sufficient interstate nexuses, the court needs not and does not decide whether the government's supply and demand theory demonstrates sufficient interstate effect.

### B. Explosives as a Class

Statutes invoking the full power of the Commerce Clause by using the "affecting . . . interstate commerce" language, Miltier, 882 F.3d at 91, reach "purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." Taylor, 579 U.S. at 307. When Congress decides to regulate the "total incidence" of a practice, "it may regulate the entire class." Gonzales v. Raich, 545 U.S. 1, 17 (2005). "[W]hen a general regulatory statute bears a substantial relation to commerce, the de minimis character of individual instances arising under that statute is of no consequence." Id. (internal quotations omitted).

In Raich, the Supreme Court upheld the application of 21 U.S.C. § 841(a)(1) to purely personal intrastate cultivation and possession of marijuana. Id. at 22. The Court concluded that this provision, a component of the Controlled Substances Act, was part of a larger economic regulatory scheme governing "the production, distribution, and consumption of commodities for which there is an established, and lucrative, interstate market." Id. at 26. Congress "had a rational basis for concluding that leaving home-consumed marijuana outside federal control" would affect interstate commerce. Id. at 19.

Similarly, the prohibitions in 18 U.S.C. § 842(i) apply to the purely personal intrastate manufacture and possession of explosives by prohibited persons, such as those with prior felony convictions. This provision was enacted as part of the Explosives Control Act, the

stated purpose of which is to "protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials." United States v. Dawson, 467 F.2d 668, 671 n.1a (8th Cir. 1972) (citing Pub. L. No. 91-452, § 1101, 84 Stat. 952 (1970)). By comprehensively regulating the "production, distribution, possession, and licensing of explosives in order to protect interstate commerce by deterring hazards to persons and property," the Explosives Control Act is undoubtedly economic in nature. Order Den. Mots. Suppress & Dismiss at 17, United States v. Luhrs, No. 4:10-cr-78 (S.D. Iowa Oct. 25, 2010), ECF No. 40; see also United States v. Lechner, 806 F.3d 869, 876-77 (6th Cir. 2015) ("Congress's comprehensive regulation of explosives—like its regulation of firearms and drugs—is permissible because the misuse of such material, especially when transported on highways, has a substantial effect on interstate commerce."). Because Congress could rationally conclude that "the misuse of explosive materials is one activity which, as a class, affects commerce, the Government need not specifically allege and prove a connection between interstate commerce and the conduct made criminal by § 842[]." Dawson, 467 F.2d at 673.

To put it simply: because Congress regulates explosives as a class, see id., the Commerce Clause grants it authority to regulate individual instances of the class, see Raich, 545 U.S. at 3. Further, because the text of 18 U.S.C. § 842(i) invokes the full extent of this Commerce Clause power, see Miltier, 882 F.3d at 91, this provision encompasses intrastate activity like Wright's as a matter of statutory interpretation.

### C. Use of Public Roads

Regulation of the channels and instrumentalities of interstate commerce is a key part of Congress's Commerce Clause power. Taylor, 579 U.S. at 306. This includes the authority to "keep the channels of interstate commerce free from immoral and injurious uses," Caminetti v. United States, 242 U.S. 470, 491 (1917), and to prevent "misuse[]" of the channels of interstate commerce," Perez v. United States, 402 U.S. 146, 150 (1971). The transportation of explosive material by a prohibited person on public roads is a misuse of the channels of interstate commerce within reach of 18 U.S.C. § 842(i). Miltier, 882 F.3d at 91 (holding that a statute invokes the "full extent" of Congress' Commerce Clause power by regulating conduct "affecting . . . interstate commerce").

In United States v. Verna, the defendant was charged with placing a bomb in a vehicle that could travel on intra- or interstate roads. 113 F.3d 449, 502 (4th Cir. 1997). This purely intrastate conduct had sufficient interstate connection due to "[t]he potential, if not actual, effect on interstate commerce of a bomb in a vehicle traveling on a state highway which connects directly or indirectly with the interstate highway system." Id. This case is directly on point—because Wright transported explosive material on roads that "connect directly or indirectly with the interstate highway system," his actions affected interstate commerce. See also Crook v. Bryant, 265 F.2d 541, 543 (4th Cir. 1959) (holding that an intrastate road connecting to interstate roads was an instrumentality of interstate commerce).

Wright argues that Verna does not apply because that case involved a violation of 18 U.S.C. § 922(g) instead of § 842(i). Def. Mot. Dismiss, ECF No. 42, at 8. This is not so. For the purpose of evaluating interstate nexus, the bomb in Verna is indistinguishable from Wright's completed TATP. Each object meets the relevant statutory definition: "destructive

8

device" in Verna and "explosive" here. Verna, 113 F.3d at 501-03. Each object was manufactured and possessed by a prohibited person. Id. Finally, each object was put into a vehicle that travelled intrastate roads, thereby affecting interstate commerce. Id.

The Supreme Court's holding in Jones v. United States, 529 U.S. 848 (2000), does not change this conclusion. Jones reiterates the "breadth of the statutory term 'affecting . . . commerce,' . . . words that, when unqualified, signal Congress' intent to invoke its full authority under the Commerce Clause." Id. at 854. The statutory provision interpreted in Jones, however, includes limiting language making the provision applicable only to property "used in interstate . . . commerce or in any activity affecting interstate . . . commerce." Id. at 851 (emphasis added). Jones held that an owner-occupied private home was not "used in" interstate commerce, despite the property's connection to a mortgage and casualty insurance policy, as well as receipt of interstate natural gas services. Id. at 854-55.

Unlike the statutory provision in Jones, 18 U.S.C. § 842(i) includes no such limiting language. Instead, § 842(i) makes it unlawful for certain classes of people "to ship or transport any explosive in or affecting interstate or foreign commerce or to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce." Id. In the absence of such limiting language, § 842(i) is properly given a broad construction coextensive with Congress's Commerce Clause authority. This construction encompasses Wright's intrastate transportation of TATP on public roads.

**IV.**

Because 18 U.S.C. § 842(i) prohibits the intrastate possession of explosives by individuals with prior felony convictions, Wright's motion to dismiss Count One, ECF No. 42, is **DENIED.**

An appropriate Order will be entered.

Entered: January 30, 2023

Digitally signed by Michael F. Urbanski  Chief U.S. District Judge
Date: 2023.01.30 15:39:56 -05'00'

Michael F. Urbanski
Chief United States District Judge