IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 7:22-cr-015 |
| | ) |
| ROBERT WAYNE WRIGHT, | ) By:   Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant. | ) |

### MEMORANDUM OPINION

This matter comes before the court on the government's Motion for Clarification Regarding the Elements of Count One, ECF No. 78. The court **GRANTS** Part A of the government's Motion for Clarification, id., but, for the reasons stated below, declines to adopt the government's view as to the mens rea requirement. The court **TAKES UNDER ADVISEMENT** Part B of the government's Motion for Clarification, id., and will address the issue of the interstate commerce jury instruction, as well as defendant's Motion for Reconsideration, ECF No. 87, in a separate memorandum opinion and order.

### I. Background

Wright stands charged by a two-count indictment. ECF No. 3. The instant motion focuses exclusively on Count One, which charges Wright with possessing triacetone triperoxide ("TATP")—also called the Mother of Satan—thereby violating 18 U.S.C. §§ 842(i) and 844(a). 18 U.S.C. § 842(i) states that:

> (i) It shall be unlawful for any person--(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport any explosive in or affecting interstate or foreign commerce or to receive or possess any

1

explosive which has been shipped or transported in or affecting interstate or foreign commerce.

Furthermore, 18 U.S.C. § 844 states that: "(a) Any person who--(1) violates any of subsections (a) through (i) or (l) through (o) of section 842 shall be fined under this title, imprisoned for not more than 10 years, or both[.]"

Wright previously sought to dismiss Count One of the indictment, arguing that his entirely intrastate manufacture and possession of TATP did not fall within the statute. ECF No. 42. The court denied this motion. ECF No. 53. Count Two, which is not currently at issue, charges that Wright improperly stored explosives at his residence in violation of 18 U.S.C. §§ 846, 842(j), and 844(b), as well as 27 C.F.R. 555.201 et seq. ECF No. 3.

## II. Knowledge of Prohibited Status

The parties disagree regarding Count One's mens rea requirement. While they do not dispute that the government must prove that Wright knowingly received or possessed explosives, they differ as to whether the government need prove that Wright knew that he had previously been convicted of a felony. Gov.'s Mot. Clarification, ECF No. 78, at 1–3; Def.'s Mot., ECF No. 87, at 2–6.[1] The statutory provisions under which Wright has been charged in Count One make no reference to mens rea. After careful consideration, the court holds that the government must prove that Wright knew his status as a felon.

---

[1] The law is settled that there is no scienter requirement as to the jurisdictional element connecting the explosive to interstate commerce and neither party raises this as an issue. See United States v. Evans, 74 F.4th 597, 605 (4th Cir. 2023) ("A criminal statute's jurisdictional element, however, usually has "nothing to do with the wrongfulness of the defendant's conduct" and so is "not subject to the presumption in favor of scienter.") (quoting United States v. Rehaif, 139 S. Ct. 2191, 2196 (2019)).

Generally, when a statute is silent as to mens rea, the court reads into the statute the mens rea "necessary to separate wrongful conduct from otherwise innocent conduct." Ruan v. United States, 142 S. Ct. 2370, 2377 (2022) (quoting Elonis v. United States, 575 U.S. 723, 736 (2015)). "Usually, this is 'a general intent requirement' – 'i.e., proof of knowledge with respect to the actus reus of the crime,'" United States v. Ivey, 60 F.4th 99, 117 (4th Cir. 2023) (quoting Carter v. United States, 530 U.S. 255, 269 (2000)) (holding that Hobbs Act robbery cannot be committed recklessly). This supports the rule that a defendant "generally must 'know the facts that make his conduct fit the definition of the offense' . . . even if he does not know that those facts give rise to a crime." Elonis, 575 U.S. at 735 (quoting Staples v. United States, 511 U.S. 600, 607 n.3 (1994)). If a defendant is entirely ignorant of the fact that he has a prior felony conviction, then he does not know the facts making his conduct fall within the prohibition of § 842(i). Elonis, 575 U.S. at 735; Staples, 511 U.S. at 607 n.3.

The government strenuously argues that knowingly receiving or possessing an explosive alone "suffices to separate wrongful from innocent conduct" because everyone should know that possession of a dangerous explosive like TATP itself is not an innocent act. Gov.'s Reply, ECF No. 88, at 3. But that is not how the statute is structured. There is no § 842(i) violation for someone who possesses explosives, even one as dangerous as TATP, so long as that individual does not fall into a prohibited class. True, this person must comply with a host of other legal and regulatory duties to render their possession of explosive material truly lawful, but he is innocent as to § 842(i).

Wright's charge also does not fit comfortably under the "public welfare" or "regulatory" umbrella, in which courts "have understood Congress to impose a form of strict

3

criminal liability through statutes that do not require the defendant to know the facts that make his conduct illegal." Staples, 511 U.S. at 606. Under this narrow exception, courts "have inferred from silence that Congress did not intend to require proof of mens rea to establish an offense." Id. Two factors are important in determining whether an offense falls within this exception: (1) the character of the regulated item and (2) the magnitude of the penalty.

First, "such offenses involve statutes that regulate potentially harmful or injurious items." Id. at 607; see, e.g., United States v. Dotterweich, 32 U.S. 277, 281 (1943) (suggesting, in dicta, that strict liability applied to the shipping of adulterated and misbranded drugs); United States v. Freed, 401 U.S. 601 (1971) (applying this exception to the possession of unregistered hand grenades); cf. Staples, 511 U.S. at 610–11 (holding that unregistered automatic firearms did not fall into this exception because "[g]uns in general are not 'deleterious devices or products or obnoxious waste materials'") (quoting United States v. Int'l Mins. & Chem. Corp., 402 U.S. 558, 565 (1971)).

> In such situations, we have reasoned that as long as a defendant knows that he is dealing with a dangerous device of a character that places him "in responsible relation to a public danger," Dotterweich, 32 U.S. at 281, he should be alerted to the probability of strict regulation, and we have assumed that in such cases Congress intended to place the burden on the defendant to "ascertain at his peril whether [his conduct] comes within the inhibition of the statute." [United States v. ]Balint[, 258 U.S. 250, 254 (1922)].

Id. at 607. To the court's knowledge, only one case places § 842(i) into this narrow exception: United States v. Goff, 517 F. App'x 120, 126–27 (4th Cir. 2013). However, the relevant holding in this case pertains to a mistake of law, not a mistake of fact. The court held that the government did not need to prove Goff's knowledge that the blasting caps he possessed

4

qualified as explosives under the statute. Id. Instead, the government "needed to prove only that Goff knew he possessed blasting caps." Id. at 127. Even under Goff, the defendant still needed to know the facts making his conduct illegal, even if he need not understand that the conduct itself is prohibited.

Second, in a public welfare offense, "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." Staples, 511 U.S. at 617–18 (quoting Morissette v. United States, 342 U.S. 246, 256 (1952)); Rehaif v. United States, 139 S.Ct. 2191, 2197 (2019) (noting that the exception can apply in public welfare cases that "carry only minor penalties"). In Staples, the Court mused that the case law "suggest[s] that punishing a violation as a felony is simply incompatible with the theory of the public welfare offense." 511 U.S. at 618 ("In this view, absent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea."). A defendant convicted of violating § 842(i) could face up to ten years in prison. 18 U.S.C. § 844(a)(1). This is a far cry from the minor penalty envisioned for public welfare or regulatory offenses. See Rehaif, 139 S.Ct. at 2197 (determining that the public welfare exception was inapplicable where a statute carried a "potential penalty of 10 years in prison that we have previously described as 'harsh'").

### III.    Conclusion

For the aforementioned reasons, the court **GRANTS** Part A of the government's Motion for Clarification, ECF No. 78, but declines to adopt the government's views as to the mens rea requirement.

5

The court **TAKES UNDER ADVISEMENT** Part B of the government's Motion for Clarification, id., and will address the issue of the interstate commerce jury instruction, as well as defendant's Motion for Reconsideration, ECF No. 87, in a separate memorandum opinion and order.

It is **SO ORDERED**.

Entered: September 7, 2023

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2023.09.07 09:18:31 -04'00'

Michael F. Urbanski
Chief United States District Judge